THE PEOPLE *ex rel.* Michael McInerney, Petitioner, *vs.* ROBERT M. SWEITZER *et al.* Respondents.

*Opinion filed December 16, 1914.*

1. ELECTIONS—*purpose of section 58 of the Primary law.* The purpose of section 58 of the Primary Election law is, that when two members of the board of assessors of Cook county are to be elected to fill vacancies, one of which is caused by the expiration of the term of office of the member residing outside of the city of Chicago, the candidate for the office held by such member, who receives the highest number of votes, must be nominated and have his name placed on the official ballot, even though there may be candidates for the office held by the retiring member from the city who have more votes than he has.

2. SAME—*petition for nomination fixes status of petitioner as a candidate.* One who files a petition as a candidate for nomination for the office of member of the board of assessors of Cook county at an election at which two members are to be chosen, one of whom must not be a resident of the city of Chicago, which petition states the residence of the petitioner to be in the city of Chicago, cannot, by thereafter moving to a point in Cook county outside of the city of Chicago, render himself eligible for nomination for the office of member of said board from the county outside of the city without filing a new petition, as the petition filed by him fixes his status as a candidate for the office of the retiring city member.

3. SAME—*the Primary Election law does not fix any qualifications for office.* The Primary Election law fixes no qualifications for office but only provides a method for nominating candidates to be voted for which applies equally to all persons, and no constitutional limitation is violated by providing such method.

4. CONSTITUTIONAL LAW—*board of assessors provision of section 58 of Primary law is not invalid.* The provision of section 58 of the Primary Election law relating to the nomination of candidates for member of the board of assessors of Cook county when one member is to be elected from the county outside of the city of Chicago does not delegate any judicial power to the canvassing board, nor does it operate as an amendment of the Revenue law by requiring a residence qualification for members of the board of assessors not required by such law.

ORIGINAL petition for *mandamus*.

WILLIAM F. STRUCKMANN, (FELSENTHAL, BECKWITH & WILSON, of counsel,) for petitioner.

SABATH, STAFFORD & SABATH, for respondent C. R. Walleck.

Mr. JUSTICE DUNN delivered the opinion of the court:

On the first day of the October term, 1914, Michael McInerney presented a petition for a writ of *mandamus,* with a motion for leave to file the same. The motion was allowed and the petition was filed. The respondents having demurred to the petition and the cause having been submitted on such demurrer it was sustained and the petition dismissed, with the statement that an opinion would be filed at a later time.

It appeared from the petition that at the general election to be held on November 3, 1914, two members of the board of assessors of Cook county were to be elected for the full term of six years. The primary election for the nomination of candidates was held on September 9, 1914, and there were ten candidates, including the petitioner, on the official primary ballot of the democratic party for the

nomination as members of the board of assessors. Five of these candidates were on the date of the primary election, and until the filing of the petition, residents of the city of Chicago, four of them were on that date, and subsequently, residents of Cook county outside of the city of Chicago, while the petitioner, who had been prior to and on that date a resident of the city of Chicago, living at No. 4541 Lowe avenue, in that city, and registered as a voter from that number, after having voted in the morning at the primary election as a registered voter of the city removed in the afternoon of that day to the village of Forest Park, took up his residence at No. 7401 West Twelfth street, in that village, and ever since, down to the filing of the petition, had been a resident of the village of Forest Park.

In the primary election Dennis J. Eagan, who resided in the city of Chicago, received the highest vote of any of the candidates, either within or without the city; the petitioner received the next highest number, and C. R. Walleck received the highest number of votes cast for any candidate outside the city of Chicago but several thousand less than the number cast for the petitioner. The county clerk of Cook county and two justices of the peace, constituting the canvassing board, canvassed the vote, and having ascertained and proclaimed the number of votes cast for each candidate, made a certificate that Dennis J. Eagan, residing in the city of Chicago, and C. R. Walleck, residing in the county of Cook outside the city of Chicago, had been nominated as the candidates of the democratic party for the office of member of the board of assessors.

Section 58 of the Primary Election law provides that "in the case of candidates for nomination for members of the board of assessors, where five are to be elected, four of whom are to be elected from any one city and the city has the requisite number, then the candidate for nomination living outside of such city having the highest number

of votes of his party shall be nominated, and his name shall be placed on the official ballot at the following election." It was by reason of these provisions of the statute that the canvassing, board made their certificate of the nomination of Walleck, since the three members whose terms were not about to expire and whose successors were not to be elected were all residents of the city of Chicago. The prayer of the petition was for a writ of *mandamus* requiring the canvassing board to certify the nomination of Dennis J. Eagan and the petitioner as candidates of the democratic party for the office of member of the board of assessors of Cook county.

It is insisted that the provisions of section 58 of the Primary law which have been quoted are so vague and uncertain that they cannot be enforced. It must be admitted that the language quoted is not accurately used. The board of assessors of Cook county is the only board of assessors in the State and is the board referred to in section 58. It consists of five members, but no more than two of them are required to be elected at any election. The law does not require that four of them shall be elected from any one city, but does require that not more than four of them shall be elected from any one city. It appears from the petition that on September 9, 1914, four of the members resided in the city of Chicago and one in the city of Blue Island, and that the terms of the member residing in the city of Blue Island and of one of the members residing in the city of Chicago were about to expire and their successors were to be chosen. Only one member of the board, therefore, could be elected who was a resident of the city of Chicago and the other must reside outside that city. The paragraph in question was evidently adopted to meet this situation and to provide for the nomination of a candidate from the county outside the city. While the language used does not correctly describe the situation its purpose cannot be misunderstood, and that purpose was to secure the nomination of

one candidate outside the city. The petitioner filed his petition for nomination as a resident of the city of Chicago for the one office of member of the board of assessors to which a resident of Chicago could be elected. Two officers were to be chosen but only one could be a resident of the city of Chicago. His petition, as required by law, no doubt stated his residence to be 4541 Lowe avenue, in the city of Chicago. This fixed his status as a candidate for the nomination. He could not, without filing another petition, be a candidate for the other office. He might, perhaps, make himself ineligible for nomination to the office he had sought by moving out of the city, but he could not make himself eligible for nomination to the other office without a new petition. He was a Chicago candidate as much as if the candidates had been collected in separate groups of city candidates and country candidates, and the canvassing board properly refused to count votes cast for him as a city candidate as cast for him as a country candidate. He was eligible for nomination from Forest Park when the polls of the primary election closed, but he had received no votes for such nomination.

It is contended that the provisions of the Primary law violate the constitutional guaranty that all elections shall be free and equal, in that the law requires two conflicting residence qualifications for members of the board of assessors,—one when the nomination is to be made by a political party and the other when the nomination is to be made by petition. The Primary law fixes no qualifications for office but only provides the method for nominating candidates to be voted for, and it applies equally to all persons. Nominations, if made at all, must necessarily be made before the election, and no constitutional limitation is violated by providing a method of making party nominations applying equally to all persons seeking such nominations. Every person is still free to be a candidate by complying with the law in regard to filing petitions, or he

may be nominated, even though his name is not printed on the ballot, by voters writing in his name.

It is also claimed that the provision in question violates article 3 of the constitution by authorizing the canvassing board to exercise judicial power in determining the qualifications of candidates for office. There is no such delegation of judicial power. The canvassing board merely determine from the votes cast whether the candidate has received the greater number of votes cast for the nomination for which he is a candidate, as shown by his petition.

It is argued that these provisions also violate section 13 of article 4 of the constitution, because, although entitled "An act to provide for the holding of primary elections by political parties," the act amends the Revenue act by requiring a residence qualification for members of the board of assessors not required by the latter act. It has been said the Primary law fixes no qualifications for office. It purports only to provide for the nomination of candidates for office by political parties, whatever their qualifications may be. They must be nominated within such territory as the law directs, and the law contains no other requirements as to residence.

*Petition dismissed.*